UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| TANYQUA LATRICE OLIVER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 26-018-DCR |
| | ) | |
| v. | ) | |
| | ) | |
| TYLER MURPHY, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Tanyqua Latrice Oliver is a resident of Cincinnati, Ohio. Proceeding without counsel, Oliver filed a Complaint and an Amended Complaint. [Record Nos. 1, 8] Oliver was permitted to proceed *in forma pauperis* by a prior Order. [Record No. 9] Thus, the Court reviews her Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2), which requires dismissal of any claims that are frivolous or malicious, fail to state a claim upon which relief can be granted, or seek monetary relief from a defendant who is immune to such damages. At this stage of the proceedings, the Court construes Oliver's claims liberally in her favor and accepts her factual allegations as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003).

Oliver names Tyler Murphy and Joshua Salsbury as defendants. She describes Murphy as the Chair of the Fayette County Board of Education ("the Board") and Salsbury as an attorney who represents the Board but is employed by a private law firm. Oliver attended a meeting of the Board on December 19, 2024. [Record No. 8 at 4] However, Oliver arrived early and happened upon a "celebration" that took place prior to the meeting. *Id.* She entered

the room where the celebration was being held and began writing on a dry-erase board: "Where's my son's hearing?" According to Oliver, Board police officers told her that the celebration was not open to the public and showed her to the room where the Board meeting would take place. *Id.*

During the meeting, Oliver "rotated in-between the seats closest to [Board members] Bill Bradford and Shelley Chatfield . . . not saying a single word while writing on her marker board." *Id.* at 5. According to Oliver, a Fayette County school officer advised her to stop writing on the board and, at one point, "shoved" her. Oliver spoke during the public comment portion of the meeting and then left the premises. *Id.*

Oliver tendered a handwritten "open meetings complaint" to "the front desk addressed to the presiding officer" later the same day. *Id.* She subsequently typed the complaint and sent a copy to Murphy. The Board responded *via* letter on December 24, 2025. Apparently displeased with the Board's response, Oliver filed a complaint with the Kentucky Attorney General's Office, alleging that the "Board violated the [Open Meetings Act] when it imposed conditions of attendance by not allowing [Oliver] to sit in public areas prior to the meeting and when FCPS police officers 'physically assaulted [her] by bumping' her." [*See* Record No. 8-1 at 2.]

According to Oliver, Murphy and Salsbury responded to the complaint by "issuing defamatory statements in writing that were not true" and "portraying [her] behavior as physically aggressive." [Record No. 8 at 5-6, 9.] Specifically, she alleges that the defendants "claimed she reached for a board member throughout her political protest and that the words written on her marker board were inflammatory." *Id.* at 6. The Attorney General subsequently issued Open Meetings Decision 25-OMD-020, concluding that the Board did not violate the

Act "when it held a private reception prior to its official meeting" or "when it requested that [Oliver] modify her behavior but did not require that she leave the meeting." [Record No. 8-1 at 1]

Oliver now alleges that Murphy and Salsbury, while acting under color of law, "conspired together to retaliate against [her] for her peaceful exercise of freedom of expression and political protest . . . by writing a series of defamatory letters." [Record No. 8 at 1] She further alleges defamation and intentional infliction of emotional distress, and suggests that the defendants violated the False Claims Act, 31 U.S.C. § 3729(a)(1)(B), by "submit[ting] false claims to the Kentucky State Office of the Attorney General." Oliver seeks monetary damages.

The Amended Complaint will be dismissed. To establish a claim for First Amendment retaliation, a plaintiff must prove: (1) she engaged in protected conduct, (2) the defendant took an adverse action that is capable of deterring a person of "ordinary firmness from continuing to engage in that conduct," and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct. *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (citing *Thaddeus-X v. Bladder*, 175 F.3d 378, 394, 398 (6th Cir. 1999)). Oliver has not articulated in any clear way how the defendants took an adverse action against her or that the defendants' alleged "letters" were motivated by Oliver's protected conduct. *See Thaddeus-X*, 175 F.3d at 396 (observing that "[i]t is not necessarily true . . . that every action, no matter how small, is constitutionally cognizable" as an "adverse action"); *Dye v. Office of the Racing Comm.*, 702 F.3d 286, 303 (6th Cir. 2012) ("The term adverse action has traditionally referred to actions such as discharge, demotions, refusal to hire, nonrenewal of contracts, and failure to promote."); *Hill*, 630 F.3d at 473-74 (transferring a prisoner to another facility or placing him

in segregation may constitute "adverse action" for purposes of First Amendment retaliation claim).

Oliver also does not allege that a person of ordinary firmness would be deterred from exercising her First Amendment rights based on the defendants' alleged conduct. Additionally, Oliver claims that the defendants' comments about her were made in response to her Open Meetings Complaint to the Attorney General—not in response to her protected conduct at the Board meeting. Finally, Oliver has not alleged any facts to indicate that the defendants engaged in a conspiracy.

Oliver's claim under the False Claims Act ("FCA") also will be dismissed. "The purpose of the False Claims Act is to provide for restitution to the government of money taken from it by fraud." *Kim v. Grand Valley State Univ.*, No. 18-1637, 2018 WL 11303642, at *2 (6th Cir. Nov. 7, 2018) (quoting *U.S. ex rel Augustine v. Century Health Serv. Inc.*, 289 F.3d 409, 413 (6th Cir. 2002)). Here, Oliver has not described the defendants' alleged fraud, nor has she pleaded "a connection between the alleged fraud and an actual claim made to the government," as required to sustain a claim under 29 U.S.C. § 3729(a)(1)(B). *Id.* (quoting *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 473 (6th Cir. 2011)). Moreover, a *pro se* litigant may not file a claim under the FCA. *Kim*, 2018 WL 11303642, at *2 (collecting cases).

Oliver's only remaining claims are her state law tort claims of defamation and intentional infliction of emotional distress. Where a federal court exercises jurisdiction over state law claims pursuant to 28 U.S.C. § 1367(c) solely by virtue of supplemental jurisdiction and the federal claims have been dismissed prior to trial, the court will generally decline to

retain jurisdiction over the state law claims.[1]  *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993).

In deciding whether to proceed, a district court considers the interests of judicial economy and the avoidance of multiplicity of litigation, and balances those interests against needlessly deciding state law issues.  *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012); *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009).  Given the early stage of the proceedings in this case, the Court finds that consideration of the relevant factors weigh against the continued exercise of supplemental jurisdiction.  *See* 28 U.S.C. § 1367(c)(3); *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1255 (6th Cir. 1996) ("After a 12(b)(6) dismissal, there is a strong presumption in favor of dismissing supplemental claims.").  Therefore, Oliver's state law claims will be dismissed without prejudice.

Based on the foregoing, it is **ORDERED** as follows:

1. Oliver's Amended Complaint is **DISMISSED**.

2. This matter is **STRICKEN** from the docket.

Dated: March 5, 2026.

Danny C. Reeves, District Judge
United States District Court
Eastern District of Kentucky

---

[1] Contrary to Oliver's assertion, this Court does not have jurisdiction over the case pursuant to 28 U.S.C. § 1391(b).  That statute addresses *venue* whereas 28 U.S.C. § 1331 confers jurisdiction in this Court for controversies arising under federal law.  Section 1367 gives the Court "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."